Michael Kind, Esq.
Nevada Bar No. 13903
Gustavo Ponce, Esq.
Nevada Bar No. 15084
**KAZEROUNI LAW GROUP, APC**
6069 S. Fort Apache Rd., Ste 100
Las Vegas, NV 89148
Phone: (800) 400-6808 x7
mkind@kazlg.com
gustavo@kazlg.com
*Attorneys for Plaintiff Margaret Litherland*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Margaret Litherland,<br><br>                    Plaintiff,<br><br>v.<br><br>Clark County Collection Service, LLC, Team Health, Inc. *dba* Team Health Holdings, Inc. *dba* TEAMHealth/So. Hills, and Morris Law Center,<br><br>                    Defendants. | Case No:<br><br>**Complaint**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter

"FDCPA"), to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2. Margaret Litherland ("Plaintiff"), through counsel, brings this action to challenge the actions of Clark County Collection Service, LLC ("CCCS"), Team Health, Inc. *dba* Team Health Holdings, Inc. *dba* TEAMHealth/So. Hills (collectively as "Team Health" or "the hospital"), and Morris Law Center (the "Firm" and together with CCCS and Team Health as "Defendants") with regards to Defendants' unlawful attempts to collect debt from Plaintiff, causing harm to Plaintiff.

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

5. Unless otherwise stated, all the conduct engaged in by Defendants took place in Nevada.

6. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

**JURISDICTION AND VENUE**

7. Jurisdiction of this Court arises pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1367 (supplemental jurisdiction).

8. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") and related state law claims.

9. Defendants are subject to personal jurisdiction in Nevada, as they conduct business in Nevada.

10. Venue is proper pursuant to 28 U.S.C. § 1391 because all the conduct giving rise to this complaint occurred in Nevada.

### PARTIES

11. Plaintiff is a natural person who resides in Clark County, Nevada.

12. Plaintiff is a natural person allegedly obligated to pay a debt, and is a consumer as that term is defined by 15 U.S.C. § 1692a(3).

13. CCCS is a company that offers debt collection services.

14. Team Health is a company that manages billing and other medical aspects for hospitals around Las Vegas, and elsewhere.

15. The Firm is a law firm that regularly and routinely represents CCCS to collect debt from consumers.

16. CCCS and the Firm are each a person who uses an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and are therefore each a debt collector as that phrase is defined by 15 U.S.C. § 1692a(6).

### FACTUAL ALLEGATIONS

17. Plaintiff is alleged to have owed a debt to Team Health for medical services performed in or around June 2016 (the "debt").

18. The medical care was incurred primarily for personal, family or household purposes and the Debt is therefore a debt as that term is defined by 15 U.S.C. §1692a(5).

19. At all time relevant, Plaintiff was insured for medical expenses.

20. The "patient's responsibility" for the debt was $25.00 and Plaintiff immediately paid the $25.00 upon being requested to pay, in or around June 2017.

21. On or around June 17, 2017, Plaintiff's insurance paid the medical debt.

22. Team Health's own records reflect that, at least as of June 23, 2017, the "collection agency" processed a payment.

### The 2018 collection lawsuit

23. Nevertheless, in a declaration dated February 8, 2018, Team Health testified under the penalty of perjury that Plaintiff still owed the hospital $841.

24. Upon information and belief, this resulted in a deceptive collection lawsuit being filed against Plaintiff.

25. Specifically, on March 13, 2018, without giving Plaintiff any prior notice, Defendants filed suit against Plaintiff in the Las Vegas Justice Court, case number 18C007392 (the "collection lawsuit"), for the medical bill, plus pre- and post-judgment interest, costs and attorney fees.

26. In the lawsuit, Defendants claimed that Plaintiff "failed and refused to pay" her medical bills and misrepresented that it previously attempted to collect payment from Plaintiff, before filing suit.

### Plaintiff had no notice of the collection lawsuit

27. Defendants filed an application, or motion, for an order to serve Plaintiff by publication, even though Plaintiff lived at the same address at all times relevant.

28. Upon information and belief, this application was deceptive and designed to deny Plaintiff a meaningful opportunity to receive actual notice of the collection lawsuit. At the very least, the application was a result of the lack of due diligence by Defendants.

29. Had Plaintiff known about the lawsuit, she would have immediately appeared and defended herself.

## Defendants obtained a default judgment
## and began to garnish Plaintiff's wages

30. On January 21, 2019, Defendants obtained a default against Plaintiff, by presenting false, misleading and unfair representations that's Plaintiff owed the debt.

31. On April 2, 2019, Defendants obtained a default judgment against Plaintiff.

32. Defendants made multiple false, misleading and unfair statements, including that Plaintiff owed the debt and that Plaintiff "failed and refused to pay" her medical bills.

33. On May 3, 2019, CCCS filed a writ to execute on Plaintiff's wages and shortly thereafter began to garnish Plaintiff's wages.

34. Plaintiff found out about the collection lawsuit for the first time once she saw that her wages were being garnished.

## Defendants refused to cooperate
## and forced Plaintiff to take legal action

35. Between June 2 and June 6, 2019, Plaintiff (through family members) contacted Team Health by telephone, on more than one occasion since Plaintiff did not know why her wages were being garnished.

36. At one point, Plaintiff (or her family member) was told that Team Health notified CCCS about this issue on June 4, 2019.

37. However, neither CCCS nor Team Health appeared to care or try to assist Plaintiff.

38. On June 7, 2019, Plaintiff sent a fax to Team Health, asking that it be forwarded to CCCS, demanding that the attorney for CCCS "file a motion to vacate the judgment" in the collection case, stop the garnishments, and notify Plaintiff's employer of the error, among other things.

39. Plaintiff included in the fax evidence that the debt had been paid in 2017, a copy of the EOB, as well as other documents relating to the collection lawsuit and garnishment.

40. Upon information and belief, CCCS received the fax on the same day: June 7, 2019.

41. After receiving the fax, CCCS contacted Plaintiff for the first time by telephone. CCCS informed Plaintiff that she owed an outstanding balance of $25.00, and did not mention that it was related to a co-pay.

42. CCCS then sent Plaintiff a letter dated June 11, 2019, that stated, in part, "Please be advised that the above referenced account has been assigned to our collection agency. We would like to work with you to resolve this debt." The letter listed the balance as $25.00.

43. The letter did not address Plaintiff's requests that the judgment be vacated or the garnishments stopped.

44. Upon receiving this letter, Plaintiff felt intimidated, bullied, and harassed. Defendants made Plaintiff feel helpless because even though she proved that she did not owe the debt, CCCS was still demanding that she pay them, even though Plaintiff did not owe anything. Moreover, CCCS had not acknowledged its wrongful action or taken any steps to correct its harmful conduct.

45. On June 13, 2019, Plaintiff sent detailed certified letters to CCCS and Team Health, again, disputing the debt and sent a copy to the Consumer Financial Protection Bureau.

46. Upon information and belief, CCCS received the letter on June 17, 2019. (CCCS did not respond to this letter until July 1, 2019, after Plaintiff already hired counsel and moved the Justice Court to set aside the judgment, as discussed below.)

47. Plaintiff was desperate to have the garnishments stopped and hired an attorney.
48. On June 19, 2019, Plaintiff's attorney filed a motion to set aside the judgment, including Plaintiff's declaration and proof that the debt had been paid in 2017.
49. On June 24, 2019, CCCS filed a "satisfaction of judgment" in the Justice Court case, which was misleading in that it implied that the judgment was enforceable, but satisfied. The document stated, in part, that "the judgment sum inclusive of attorney fees and costs, [was] received from [Litherland] by Clark County Collection Service." This was false.
50. After Plaintiff's attorney appeared, CCCS agreed to stipulate to set aside the judgment, which was filed in the Justice Court on July 11, 2019, and to cease the garnishments.
51. Finally, on Plaintiff's July 26, 2019, paycheck, Plaintiff was reimbursed for the wages that were previously garnished.

### Additional violations and allegations of pattern and practice

52. The events described above was not the first time CCCS wrongfully collected or attempted to collect money from Plaintiff for a hospital debt.
53. On August 13, 2015, CCCS sued Plaintiff a medical debt and sought to serve Plaintiff by publication in the Las Vegas Justice Court, case number 15C014282.
54. Under the threat of garnishment, Plaintiff was coerced into signing a stipulation for judgment, which CCCS filed in the Justice Court.
55. Under the stipulation, Plaintiff was required to pay $200 a month for the entire balance, including costs, interest, and attorney's fees.
56. After making her first $200 payment, Plaintiff was able to show that her insurance had already paid the debt and CCCS agreed not to pursue the matter.

57. To date, that case is still pending in the Las Vegas Justice Court and has not been dismissed.

58. Notably, CCCS refunded Plaintiff her $200 on February 28, 2017, about fourteen months after Plaintiff made the payment, and only about two weeks before CCCS sued Plaintiff for the hospital debt described above (unbeknownst to Plaintiff).

### Plaintiff's damages

59. Plaintiff has suffered extreme emotional distress and mental anguish as a result of Defendants' actions described herein, exacerbated by years of dealing with CCCS' and Team Health's accusation regarding these fake debts. In addition, Plaintiff was forced to pay $850 for legal representation, and incurred out-of-pocket costs and time in her repeated attempts to dispute Defendants' actions. Plaintiff incurred additional damages associated with Defendants taking her money for a substantial time, including lost opportunities and interest. Plaintiff further suffered humiliation and embarrassment when her employer was notified that Plaintiff owed the debt and when Plaintiff needed to seek the help of others, including friends, family, and an attorney, because Plaintiff felt helpless against Defendants.

### COUNT I

### FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

### 15 U.S.C. § 1692, *et seq.*

### —AGAINST CCCS AND MORRIS LAW CENTER ONLY—

60. Plaintiff repeats, re-alleges, and incorporates by reference all previous paragraphs.

61. Defendants' conduct violated § 1692e by using false, deceptive, and misleading representations and means in connection with the collection of any debt.

62. Defendants' conduct violated § 1692e(2) by falsely representing the character, amount, or legal status of any debt.

63. Defendants' conduct violated § 1692e(5) by threatening to take action against Plaintiff which could not be legally taken in connection with the debt.

64. Defendants' conduct violated § 1692e(10) in that Defendants employed various false representations and deceptive means in an attempt to collect the debt from Plaintiff.

65. Defendants' conduct violated 15 U.S.C. § 1692f in that Defendants used unfair and unconscionable means to collect a debt from Plaintiff.

66. Defendants' conduct violated 15 U.S.C. § 1692f(1) in that Defendants collected an amount that was not expressly authorized by the agreement creating the debt or permitted by law.

67. CCCS' conduct also violated § 1692d in that CCCS engaged in conduct the natural consequence of which was to harass, oppress, or abuse any person in connection with the collection of a debt. Specifically, CCCS' letter dated June 11, 2019, and its demand for Plaintiff to pay $25.00, after Plaintiff proved that her insurance had paid the debt, had the natural consequence to harass, oppress, or abuse a consumer.

68. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA.

69. As a result of each and every violation of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Defendants.

## COUNT II

### NEVADA'S DECEPTIVE TRADE PRACTICES ACT

### NRS 598

### —AGAINST TEAM HEALTH ONLY—

70. Plaintiff incorporates by reference all previous paragraphs.

71. Defendant violated NRS 598.0915(15) by making a "false representation in a transaction" in the course of its business.

72. Defendant violated NRS 598.0923(2) when it failed to disclose material facts regarding the debt.

73. Defendant violated NRS 598.0923(3) when it violated other a state or federal statutes or regulations relating to the sale or lease of goods or services, including but not limited to submitting a false declaration that Plaintiff owed the debt.

74. Defendant violated NRS 598.0923(4) when it used coercion, duress and intimidation against Plaintiff.

75. NRS 41.600(1) states that an action may be brought by any person who is a victim of consumer fraud.

76. NRS 41.600(2) defines "consumer fraud" as a "deceptive trade practice" as defined in NRS 598.0915 to NRS 598.0925.

77. Plaintiff is entitled to recover her actual damages pursuant to NRS 41.600(3)(a) in an amount to be determined at trial.

78. Plaintiff is entitled to recover consequential damages pursuant to NRS 41.600(3)(a) in an amount to be determined at trial.

79. Defendant's conduct was oppressive, malicious, and fraudulent such that an award of punitive damages is justified in order to punish Defendant and deter others from like conduct.

80. Plaintiff is entitled to recover his reasonable attorney's fees and costs pursuant to NRS 41.600(3)(c), NRS 18.010(2)(a), or under the terms of the contract.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants, and Plaintiff be awarded damages from Defendants, as follows:

Count One, against CCCS and Morris Law Center:

- Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);
- Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);
- Costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3); and
- Other relief as the Court deems just and proper.

Count Two, against Team Health:

- Actual and consequential damages in an amount to be determined at trial;
- Punitive damages in an amount to be determined at trial;
- Costs of litigation and reasonable attorney's fees; and
- Other relief as the Court deems just and proper.

**JURY DEMAND**

81. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

DATED this 9th day of August 2019.

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: /s/ Michael Kind
   Michael Kind, Esq.
   Gustavo Ponce, Esq.
   6069 S. Fort Apache Rd., Ste 100
   Las Vegas, NV 89148
   *Attorneys for Plaintiff*